**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **ROBERT SMITH, Individually, and on Behalf of All Others Similarly Situated,** ) ) ) ) | |
| **Plaintiffs,** ) ) | **Case No. 10-cv-6574** |
| **v.** ) ) | **Judge Suzanne B. Conlon** |
| **SAFETY-KLEEN SYSTEMS, INC.,** ) ) | |
| **Defendant.** | |

**DEFENDANT'S MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Defendant Safety-Kleen Systems, Inc. ("Safety-Kleen"), pursuant to Fed. R. Civ.

P. 56 and local rule 56.1, by and through its attorneys, Baker & McKenzie LLP, hereby

submits its Memorandum of Law in Support of its Motion for Summary Judgment.

**I.      INTRODUCTION**

Virtually all employees in America wear a uniform.  Some must abide by a dress

code while wearing their own clothing, while others wear specific company-provided

uniforms.  Depending on the job, the uniform varies.  For example, a restaurant employee

may be required to wear black clothing and slip resistant shoes, just as an office

employee may be required to wear a suit or dress and dress shoes.  Despite the variance

in specific attire, virtually all jobs require employees to wear pants, a shirt and shoes.

Perhaps because all employees wear these items, time spent changing into pants, a shirt

and shoes is almost never compensable under the Fair Labor Standards Act ("FLSA").

Similarly, almost all employees in America must walk some distance within their

employer's facility before beginning work.  For example, a grocery store employee may

walk to a break room in the back of the store, may have to pass through security and take an elevator to reach the office, an employee of a store in a shopping mall has to walk through the mall to get to the store, and a construction employee may walk through a construction site to reach the area where a time clock is located. Retail employers typically place the employee parking area far away from the store to allow customers to use the closest parking spaces. Employees must walk that distance before reaching the time clock. As above, time spent walking to a time clock is almost never compensable under the FLSA.

Plaintiffs are seeking overtime compensation for these routine activities that the Department of Labor and courts have consistently held are non-compensable. Before clocking in each day, Plaintiffs change into ordinary work clothes, boots, safety glasses and a hard hat in the employee locker room and then walk to the time clock. These exact same items are worn by all managers and supervisors – except for the color of the shirt. Even guests to the facility must put on safety glasses and a hard hat.

Plaintiffs receive a paid 30 minute meal period each day and at the end of their shift they receive an additional 15 minutes of pay as "shower time." After clocking out, Plaintiffs walk back to the employee locker room where they change out of their work clothes and shower.

All task-specific, specialized protective equipment, such as Tyvek suits, respirators, aprons and neoprene gloves, is "donned" after the Plaintiffs have clocked in and "doffed" before the Plaintiffs clock out each day. Plaintiffs are fully paid for all time spent "donning" and "doffing" this specialized protective equipment.

As a matter of law, Plaintiffs' claims fail. The activities for which Plaintiffs are seeking compensation are classic "preliminary" and "postliminary" activities that are not compensable under the Fair Labor Standards Act ("FLSA"). Accordingly, summary judgment should be granted in Safety-Kleen's favor.

## II.     ARGUMENT

### A.     Plaintiff's Allegations Involve Classic Preliminary and Postliminary Activities that are Not Compensable Under the FLSA

In a short-lived 1946 holding, the Supreme Court construed the FLSA to require pay for the time employees spent walking on the employer's premises before clocking in and for donning and doffing aprons and overalls. *Anderson v. Mount Clemens Pottery Co.*, 328 U.S. 680, 691-93 (1946).

The Portal-to-Portal Act was enacted in 1947. It was designed primarily to address an "existing emergency" resulting from wage claims by employees which, if allowed in accordance with *Anderson*, would have created "wholly unexpected liabilities, immense in amount and retroactive in operation." 29 U.S.C. § 251 *et seq.* The Portal-to-Portal Act was designed to define and clarify the law relating to an employer's obligation to pay employees for travel and other activities before and after the workday. Under the Act, payment is not required for "walking, riding or traveling to and from the actual place of performance of the principal activity or activities which such employee is to perform" or "activities which are preliminary or postliminary to said principal activity or activities." 29 U.S.C. § 254(a)(1), (2).

The Department of Labor adopted the "continuous workday rule" previously established by the U.S. Supreme Court. In its regulations, the Department of Labor generally defines "workday" as the "the period between the commencement and

completion on the same workday of an employee's principal activity or activities … and includes all time within that period whether or not the employee engages in work throughout all of that period." 29 C.F.R. § 790.6(b). Importantly, however, the DOL has also established that "[o]ther types of activities which may be performed outside the workday and, when performed under the conditions normally present, would be considered 'preliminary' and 'postliminary' activities include *checking in and out and waiting in line to do so, changing clothes, washing up or showering*, and waiting in line to receive paychecks." 29 C.F.R. § 790.7(g) (emphasis added).[1]

Courts have consistently held that the type of pre- and post-shift activities engaged in by Plaintiffs are not compensable. The Seventh Circuit has held that an employee's donning of a uniform shirt, gloves and work shoes were not integral and indispensable to the employee's principal activities and is not compensable. *Pirant v. United States Postal Service*, 542 F.3d 202, 209 (7th Cir. 2008) ("[T]he donning and doffing of this type of work clothing is … akin to showering and changing clothes 'under normal conditions' that the Supreme Court said in *Steiner* is ordinarily excluded by the Portal to Portal Act as merely preliminary and postliminary activity."); *see also, Reich v. IBP, Inc.*, 38 F.3d 1123, 1126 n.1 (10th Cir. 1994) (requiring employees to put on safety

---

[1] In its *Administrator's Interpretation No. 2010-2* issued on June 16, 2010, the U.S. Department of Labor examined the definition of "clothes" under Section 3(o) of the Fair Labor Standards Act and whether time spent "changing clothes or washing at the beginning of each day" "is excluded from compensable time under the FLSA if the time is excluded from compensable time pursuant to 'the expressed terms or by custom or practice' under a collective bargaining agreement. 29 U.S.C. § 203(o). It was the Administrator's interpretation that "clothes changing covered by § 203(o) may be a principal activity. Where that is the case, subsequent activities, including walking and waiting, are compensable. This historical interpretation of § 3(o) of the FLSA is not applicable to the facts of the instant case which concern employees changing in and out of ordinary work clothes as well as work boots, hard hats and safety glasses.

glasses, earplugs, and hard hat "is no different from having a baseball player show up in uniform, a businessperson with a suit and tie, or a judge with a robe"); *Anderson v. Pilgrim's Pride Corp.*, 147 F.Supp.2d 556 (E.D. Tex. 2001) (donning of aprons, smocks, gloves, boots, hairnet, and earplugs not compensable).

As the Second Circuit noted, "[A] helmet, safety glasses, and steel-toed boots may be indispensable to plaintiffs' principal activities without being integral. The donning and doffing of such generic protective gear is not different in kind from 'changing clothes and showering under normal conditions,' which, under *Steiner*, are not covered by the FLSA." *Gorman v. Consolidated Edison Corp.*, 488 F.3d 586, 594 (2d Cir. 2007) (citing and distinguishing *Steiner v. Mitchell*, 350 U.S. 247, 249 (1956) (changing clothes and showering under normal conditions "ordinarily constitute 'preliminary' or 'postliminary' activities excluded from compensable work time"). Further, "awaiting the first principal activity of the workday is not itself a principal activity …" *Id.* at 591.

Plaintiffs contend they should be paid overtime for time spent changing into and out of *ordinary* work clothes and equipment – i.e., a regular work shirt, pants, safety glasses, boots and a hard hat. Any *specialized* protective gear (such as Tyvek suits, respirators, aprons and neoprene gloves) is "donned" and "doffed" at the employee's work station after clocking in and before clocking out. (SOF ¶¶ 22-26).[2] All time that Plaintiffs spend donning and doffing this specialized gear and equipment is "on the clock" and Plaintiffs are fully compensated for this activity. (SOF ¶ 26).

---

[2] Citations to Plaintiffs' Complaint, filed October 14, 2010, Docket No. 1, shall be abbreviated as "(Compl. ¶ __);" and to Defendant's Statement of Material Facts as to Which There is No Genuine Dispute In Support of Its Motion for Summary Judgment as "(SOF __)."

CHIDMS1/2928786.5

Changing into and out of generic work clothes and showering are classic preliminary and postliminary activities that are not integral and indispensable to Plaintiffs' principal activities and do not constitute compensable time and Plaintiffs claims as a matter of law must be dismissed.

### B.     Plaintiffs Cannot Voluntarily Engineer an FLSA Violation

Plaintiffs' attempt to allege claims that will result in a self-created windfall based on voluntary early arrival is not permissible under the FLSA.  For example, in *Roland v. Unity Ltd. P'Ship*, No. 07-C-1103, 2010 U.S. Dist. LEXIS 29623 (E.D. Wis. Mar. 29, 2010), a group of nurses unsuccessfully alleged violations of the FLSA because they were not paid for self-created "wait time" during their shifts.  In that case, the named plaintiff voluntarily arrived at work prior to her shift at 6:15 a.m. (instead of the standard 7:00 a.m. start time) and then decided on her own to take an hour off beginning at 6:40 a.m.  The court held that: "The fact that she voluntarily began work earlier than was required and then created an hour-long gap in her schedule does not entitle her to compensation for that gap."  *Id*. at *23-24.  The *Roland* court held: "[I]t would not make sense to allow an employee to take advantage of a flexible schedule and then engineer her employer's FLSA violation by creating a gap of "wait time" in his own schedule."  *Id.*

Similarly, in this case, the time at issue includes classic non-compensable preliminary and postliminary activities including an "engineered" gap of wait time caused by Plaintiffs' voluntary decision to arrive at the facility early and wait in the break room.  (SOF ¶ 21).

CHIDMS1/2928786.5

**C.** **Any Potential Compensable Overtime is Offset By the Paid Meal Break and Shower Time**

Even assuming *arguendo* that Plaintiffs should have been compensated for some activities before or after the time they clocked in or clocked out, Plaintiffs' 30 minute paid meal period and 15 minutes of paid shower time at the end of each shift offset any potential liability for overtime under the FLSA. In *Barefield v. Village of Winnetka*, 81 F.3d 704, 710 (7th Cir.1996), the Seventh Circuit held that a paid lunch period that was not required to be paid can be used to "offset" other off-the-clock work that should have been paid on a daily basis. In that case, the court held that the employer's 30-minute paid meal periods were not required to be paid under the FLSA. Because the employer paid employees for their meal periods, the court held the employer could "properly offset the meal break against the compensable roll call time worked by [its employees]." *Id.*

In this case, Safety-Kleen provides a 30-minute meal period to all of the Plaintiffs. (SOF ¶ 27). Although not required by the FLSA, Safety-Kleen pays Plaintiffs for the 30 minute meal period. (SOF ¶ 27). Safety-Kleen also pays Plaintiffs an additional 15 minutes each day for shower time after they clock out – even though that is a non-compensable postliminary activity. (SOF ¶ 38). Accordingly, even if Plaintiffs had any minimal uncompensated time each day (which they did not), that time would be more than offset by the additional compensation they received for paid lunch periods and shower time. Moreover, the determination of whether each individual Plaintiff would be required to any overtime pay would require analyzing Plaintiffs schedule for each individual week and whether they were scheduled to work forty (40) hours a particular week or were off work due to personal or sick time, holidays or vacations.

Most of the Plaintiffs were deposed. Each gave widely varying estimates of time for the tasks performed before clocking in and after clocking out.[3] For example, named Plaintiff Robert Smith estimated that his walk from the locker room to the production office (where the time clock is located) could take a "couple minutes" or as many as 45 minutes.[4] (Smith Dep. 94, 170-71). In contrast, opt-in Plaintiff George Marx said it could take as few as two (2) minutes. (Marx Dep. 44,45). In a similar disparity, Plaintiff Jonnel Jones testified that his post-shift shower takes approximately 7-8 minutes (Jones Dep. 168), while Plaintiff Smith initially said his shower was "in and out," but then changed his testimony to state that the shower would take "a lot more than 15 minutes" and sometimes 30 minutes. (Smith Dep. 112, 114, 116). Plaintiff Ramon Perez stated that his shower could take 15 or 20 minutes. (Perez Dep. 113). Each Plaintiff admitted that they had never timed any of the pre- and post-shift activities, and that they could provide nothing other than an estimate. (Smith Dep. 71, 72, 86, 92, 94, 110, 115; Hunter Dep. 56, 62, 66, 67, 100, 102, 103, 105, 109; Perez Dep. 89, 116; Marx Dep. 44, 45, 47; Gunby Dep. 55, 60, 82, 123, 124, 141; Jones Dep. 171, 172).

Because of the unreliable and changing testimony, Safety-Kleen hired an actor and videographer to prepare video evidence regarding the pre- and post-shift activities

---

[3] The time estimates provided by Plaintiffs are not "material facts" for the purpose of Safety-Kleen's Motion for Summary Judgment, so cites directly to the depositions, rather than the Statement of Material Facts will be provided for the purposes of this paragraph.
[4] Plaintiff Smith's testimony was initially that the walk took "a couple of minutes." After a break in which he spoke privately with his attorney, his testimony changed to 5 minutes, and up to 45 minutes in the winter. Similarly, Plaintiff Jones initially stated that the walk would take 5 minutes, after which his attorney immediately asked for a break. After the break, Jones testified that his estimate was based on jogging or running speed, even though employees are not permitted to run in the facility. He changed his testimony to state that the walk would take 8 minutes in the summer, and 10-15 minutes in the

and the time it takes to complete those activities. (SOF ¶ 39). Because of the wide disparity in the unreliable and changing estimates provided by Plaintiffs, the video constitutes the best evidence of the time it takes to conduct activities and the disparate estimates prepared by Plaintiffs should be disregarded. The video contains both summer and winter reenactments, so that all potential clothing and gear worn by Plaintiffs would be included.

In the summer reenactment, it took 7minutes, 33 seconds from the moment the actor walked in the door of the locker room until he clocked in. It took 13 minutes, 53 seconds for the actor to complete the post-shift tasks, including a shower. In the winter reenactment, it took the actor 9 minutes, 51 seconds to complete pre-shift tasks and 16 minutes, 10 seconds to complete post-shift tasks, including a shower. In total, the pre- and post- shift should take no more than 21 minutes in the summer and 26 minutes in the winter. Plaintiffs are paid an extra 15 minutes for these activities as "shower time." Even if every second spent inside the facility were compensable, the remaining 6-11 minutes is more than offset by the 30-minute paid lunch and Plaintiffs' claims should be dismissed.

## III.    CONCLUSION

For all of the foregoing reasons, Plaintiffs' allegations that they are not being paid for all time worked prior to and at the end of their shift has no merit as a matter of law and Defendant's Motion for Summary Judgment should be granted.

---

winter. Finally, Jones testified that the same walk at the end of the shift would take 12-14 minutes in the summer and 18 minutes in the winter.

Dated:  September 20, 2011   Respectfully submitted,

          SAFETY-KLEEN SYSTEMS, INC.

            /s/ Ryan H. Vann
            One of Its Attorneys
          Robert J. Mignin
          Ryan H. Vann
          BAKER & McKENZIE LLP
          130 E. Randolph St., Suite 3500
          Chicago, Illinois 60601
          312-861-8000

CHIDMS1/2928786.5

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT was served upon the following parties via this Court's ECF filing system, this 20th day of September, 2011:

Ryan F. Stephan
James B. Zouras
Stephan Zouras, LLP
205 N. Michigan Avenue, Suite 2560
Chicago, Illinois 60601


/s/ Ryan H. Vann
Ryan H. Vann

CHIDMS1/2928786.5